# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAMBERT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-1573 |
| v. | ) | |
| | ) | |
| ENVIRONMENTAL RESTORATION | ) | |
| GROUP, INC., MALCOLM PIRNIE, INC. | ) | |
| and MOLYCORP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court for consideration and disposition is the MOTION TO DISMISS COUNT I OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM (*Document No. 11*) filed by Defendant Environmental Restoration Group, Inc. ("ERG"). Plaintiff has filed a response (*Document No. 19*), ERG has filed a reply brief (*Document No. 21*), and the motion is ripe for disposition.[1]

Factual Background

The relevant facts are summarized from the allegations in the Complaint. Michael Lambert is experienced in environmental protection, health physics and occupational safety and health. He became employed by Defendant ERG in January 2006 as an Assistant Radiation Safety Officer ("ARSO"). The project involved removal of radioactively contaminated soil and building debris in accordance with a Nuclear Regulatory Commission (NRC) decommissioning plan. The site was owned by Defendant Molycorp, Inc., and ERG acted as a subcontractor to

---

[1] Defendant Malcolm Pirnie, Inc. filed a response, stating that it "takes no position" on the Motion to Dismiss.

Malcolm Pirnie on the project. As an ARSO, Lambert had full responsibility for the development and implementation of the occupational radiation protection program required by the Molycorp NRC license and applicable federal regulations.

During the course of the project, Lambert identified numerous safety violations. His reports resulted in numerous work stoppages, which created hostility among the project management team. On May 6, 2006, Dr. Ken Baker, the president of ERG, found Lambert's work to be excellent but indicated that site managers were displeased with Lambert's reports of safety violations and suggested that he try to be less involved with occupational safety issues at the site. ¶ 28.

On July 5, 2006, Lambert became embroiled in a dispute as to whether potentially hazardous soil samples could be transported over public highways without first being screened. On July 17, 2006, the project team started performing work in posted radioactive material areas which generated excessive amounts of dust. Lambert strongly urged that the pace be slowed to enable effective dust-suppression efforts, to prevent the potential of airborne radioactive material. When project managers refused to slow the pace, Lambert directed all ground personnel to be removed, except for equipment operators within enclosed, ventilated cabs. Project management personnel met and concluded that Lambert should be removed from the project. They communicated their decision to Dr. Baker, and directed him to remove Lambert. On July 24, 2006, Dr. Baker terminated Lambert from employment.

The Complaint asserts three causes of action. In Count I, the only claim relevant to the instant motion, Lambert asserts a claim for Wrongful Discharge against ERG. In Counts II and III, he asserts claims for Tortious Interference With Contractual Relations and Conspiracy against Molycorp and Malcolm Pirnie.

Standard of Review

The proper standard for evaluating motions to dismiss has been the subject of two recent binding decisions. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), all nine justices of the United States Supreme Court agreed that the oft-quoted standard that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" has been retired and "is best forgotten." *Id.* at 1968. The Court explained that a complaint must allege enough "facts" to show that a claim is "plausible" and not merely conceivable. The term "plausible" is not susceptible of mathematical quantification, but lies somewhere on the rhetorical spectrum between "conceivable" or "speculative" and "probable." Indeed, the *Twombly* Court made a distinction between facts that were merely "consistent" with wrongful conduct and facts that would be "suggestive" enough to render the alleged conduct plausible. In particular, the Court upheld dismissal of a complaint alleging an antitrust conspiracy, despite "stray averments" that defendants had entered into an unlawful agreement, explaining that the plaintiff had alleged "merely legal conclusions." *Id.* at 1970. The Supreme Court also emphasized the need for district courts to prevent unjustified litigation expenses resulting from claims that are "just shy of a plausible entitlement." *Id.* at 1967, 1975.

In *Phillips v. County of Allegheny*, 2008 WL 305025 (3d Cir. February 5, 2008), the Court of Appeals for the Third Circuit further refined the new *Twombly* standard. As the Court of Appeals explained, "notice pleading" pursuant to Rule 8(a)(2) remains intact, but requires the pleader to make a "showing" of entitlement to relief, and to give the defendant fair notice of what the claim is and the grounds upon which it rests. A pleader may not simply make a "bare

3

averment that he wants relief and is entitled to it." *Id.* at *6. Labels, conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Id.* at *4. Rather, the now-applicable pleading standard is as follows: stating a claim requires a complaint with enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal evidence of all the necessary elements of Plaintiff's claims. *Id.* at **6-7.

Discussion

The issue now before the Court is whether Plaintiff may assert a wrongful termination claim against his former employer. The parties agree that under Pennsylvania law, there is a strong presumption of "at will" employment – an employee may be terminated for any reason or no reason at all. However, the parties also recognize that Pennsylvania law creates a narrow exception such that "an employee is permitted to bring a cause of action for wrongful discharge where a termination would violate 'a clear mandate of public policy.'" *Howell v. PPL Services Corp.*, 232 Fed. Appx. 111, 113 (3d Cir. 2007) (unpublished) (quoting *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa. 2000)). The gravamen of the dispute between the parties is whether Lambert has alleged an actionable violation of Pennsylvania public policy.

The alleged termination must violate **Pennsylvania** public policy, as opposed to a violation of federal law. *Id.* at 114. Pennsylvania public policy is declared by the Pennsylvania Supreme Court by examining precedent within Pennsylvania, i.e., by looking at the Pennsylvania Constitution, Pennsylvania court decisions, and statutes enacted by the Pennsylvania legislature. *Id.* (citing *McLaughlin*, 750 A.2d at 288).

The Court concludes that Lambert has alleged a cognizable violation of Pennsylvania public policy. The Worker and Community Right-to-Know Act, 35 P.S. § 7313 (the "Right-to-Know Act"), provides that "No employer shall discharge or cause to be discharged . . . an employee because the employee has . . . exercised any right afforded pursuant to the provisions of this act." The Right-to-Know Act, 35 P.S. § 7319(b) (emphasis added), further states:

> (b) **Construction with Federal law**. – This act is to be *read in conjunction with* any provision of Federal law providing for the identification, labeling or providing of information concerning hazardous substances and *is intended to supplement such Federal regulation* in the interests of protecting the health and safety of citizens of the Commonwealth.

As alleged in the Complaint, Lambert was statutorily required to exercise his expertise to protect worker and public safety in his role as an ARSO. Lambert's actions were taken pursuant to federal law concerning hazardous substances, which acted in conjunction with and furthered Pennsylvania's clearly-stated public policy of protecting the health and safety of workers and the community. It is not necessary that the duty to report violations arise under Pennsylvania law. Therefore, Lambert has properly pleaded the facts necessary to invoke the narrow "public policy" exception to the at-will employment doctrine.

The cases on which Defendant relies are distinguishable. In *Howell*, 232 Fed. Appx. at 111, the Court of Appeals held that an employee could not make out a wrongful discharge claim based on his complaints to supervisors about alleged violations of NRC regulations at a nuclear power plant. In affirming a summary judgment ruling in favor of the employer, the Court of Appeals clarified that Howell had relied exclusively on federal regulations and had failed to articulate any applicable Pennsylvania public policy. In *McLaughlin*, the Pennsylvania Supreme Court held that an allegation that an employee who alleged that she was terminated in retaliation

5

for internally reporting OSHA violations could not state a claim where she "points to no Pennsylvania statutory scheme that her discharge would undermine." 750 A.2d at 288. The dissent would have recognized a state policy embodied in the Pennsylvania Health and Safety Act, even though it had not been pleaded by the plaintiff. By contrast, Lambert has articulated a specific Pennsylvania policy expressed in the Right-to-Know Act.

At least two courts have permitted wrongful discharge claims to proceed under similar facts. In *Field v. Philadelphia Electric Co.*, 565 A.2d 1170 (Pa. Super. 1989), the Court held that the plaintiff, a health physics employee at a nuclear power plant, could pursue a wrongful discharge claim that he was terminated in retaliation for his reports of violations to the NRC. The Court explained that Field was an expert, was statutorily required to report the violations, that the federal law was designed to protect the health and safety of the public against radiation, and that Field's actions directly advanced those safety concerns. In *McLaughlin*, the Supreme Court specifically distinguished the result in *Field*. 750 A.2d at 289 n.12. In *Wetherhold v. RadioShack Corp.*, 339 F. Supp.2d 670 (E.D. Pa. 2004), the Court denied a motion to dismiss a wrongful discharge claim resulting from a store manager's complaints to OSHA concerning the air quality in his store. After a thorough review of applicable precedent, the Court implemented the *McLaughlin* dissent by concluding that OSHA essentially mirrored the public policy behind workplace safety rules under Pennsylvania law. The *Wetherhold* Court commented that the Right-to-Know law constituted an express policy that state safety regulations should be read in conjunction with federal regulations, and construed the complaint liberally as incorporating that statute. *Id.* at 678-81. In *Geary v. U.S. Steel Corp.* 319 A.2d 174, 178 (Pa. 1974), the Pennsylvania Supreme Court commented: "Certainly, the potential for abuse of an employer's

power of dismissal is particularly serious where an employee must exercise independent, expert judgment in matters of product safety."

In synthesizing these authorities, there appear to be several considerations in determining whether a wrongful discharge claim can proceed.  First, a plaintiff must point to a specific Pennsylvania policy – a federal duty, by itself, is not sufficient.  In at least some circumstances, the plaintiff's burden can be met by pointing to a Pennsylvania law that supplements or mirrors federal law.  Second, a wrongful discharge claim is easier to establish when the employee reported to state or federal regulators, as opposed to making only internal complaints.  Third, protections are greatest for employees who have specific expertise and training in health and safety or are acting under a statutory reporting duty.  Finally,  the burden at the pleading stage is less than that at the summary judgment stage.  All of these factors confirm the Court's conclusion that Lambert has stated a valid claim.

Conclusion

In accordance with the foregoing, the MOTION TO DISMISS COUNT I OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM (*Document No. 11*) filed by Defendant Environmental Restoration Group, Inc. is **DENIED**.  ERG shall file an answer to the Complaint on or before March 24, 2008.

SO ORDERED this 14th  day of March, 2008.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc: Edward J. Feinstein, Esquire
Email: efeinstein@stemberfeinstein.com

ENVIRONMENTAL RESTORATION GROUP, INC.
David A. Strassburger, Esquire
Email: dstrassburger@smgplaw.com

MALCOLM PIRNIE, INC.
Cathy Bissoon, Esquire
Email: cbissoon@cohenlaw.com

MOLYCORP, INC.
Jeffrey R. Gordon, Esquire
Email: jgordon@thorpreed.com
Kurt A. Miller, Esquire
Email: kmiller@thorpreed.com